Javier L. Merino
**DANN LAW**
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

[Additional counsel listed on signature page]

*Counsel for Plaintiffs and the Putative Classes*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BRIAN THOMPSON,** individually, and on behalf of all others similarly situated | Civil Action No. |
| and | |
| **ANGELA THOMPSON,** individually, and on behalf of all others similarly situated | |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| v. | **JURY DEMAND ENDORSED HEREIN** |
| **FLUENT, INC.** ℅ National Registered Agents, Inc. Registered Agent 160 GreenTree Drive, Suite 101 Dover, DE 19904 | |
| and | |
| **REWARD ZONE USA, LLC** ℅ The Corporation Trust Company Registered Agent Corporation Trust Center 1209 Orange Street Wilmington, DE 12801 | |
| Defendants. | |

Plaintiffs BRIAN THOMPSON and ANGELA THOMPSON, individually, and on behalf of all others similarly situated ("Plaintiffs") for their Class Action Complaint against Defendants FLUENT, INC. and REWARD ZONE USA, LLC (collectively, "Defendants"), allege, based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters, as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Brian Thompson ("Mr. Thompson") is a natural person with a principal place of residence located in Cuyahoga County, Ohio.

2.      Plaintiff Angela Thompson ("Ms. Thompson") is a natural person with a principal place of residence located in Cuyahoga County, Ohio.

3.      Defendant Fluent, Inc. ("Fluent") is a Delaware corporation with its principal place of business at 300 Vesey Street, 9th Floor, New York, New York 10282.

4.      Defendant Reward Zone USA, LLC ("Reward Zone") is a Delaware limited liability company with its principal place of business at 128 Court Street, 3rd Floor, White Plains, New York 10601. Fluent owns 100% of Reward Zone and, therefore, Reward Zone is a citizen of Delaware and New York.

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. This Court has personal jurisdiction over Defendants because they maintain their principal places of business in this District, and they conducted a significant amount of business in this District, solicited consumers in this District, and continue to engage in the complained of activity within this District.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because each Defendant resides in this District and this Court has personal jurisdiction over each Defendant.

## INTRODUCTION TO CLAIMS

7.      This is a TCPA consumer class action alleging violations of the prohibition on the use of automatic telephone dialing systems ("ATDS") without the prior consent of the called party and violations of the prohibition on making telemarketing phone calls to phone numbers listed on the National Do Not Call Registry without the prior consent of the called party.

8.      Robotexts Outlawed: Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1). Encouraging individuals to hold robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

9.      Rationale: In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

10.     The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

11.     <u>Text Messages</u>: For TCPA purposes, a text message is a call. *Latner v. Mount Sinai Health System, Inc*., 879 F.3d 52, 54 (2d Cir. 2018).

12.     <u>Prior Express Written Consent</u>: In 2013, the Federal Communications Commission ("FCC") made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, the FCC ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

> *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnotes omitted) (internal quotation marks omitted).

13.     <u>Do Not Call Registry</u>: The TCPA also outlaws unsolicited telemarketing (robotexts or otherwise) to phone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). Encouraging individuals to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(c)(5).

14.     <u>Broadly Construed</u>: As a remedial statute that was passed to protect consumers from unwanted automated telephone calls, the TCPA is construed broadly to benefit consumers.

*See Latner*, 879 F.3d at 52; *See also King v. Time Warner Cable, Inc.*, 894 F.3d 473, 474 (2d Cir. 2018).

15.     Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

16.     According to Tom Wheeler, then-FCC Chairman, "robotexts and telemarketing calls are currently the number one source of consumer complaints at the FCC."[1]

17.     "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

18.     "The FTC receives more complaints about unwanted calls than all other complaints combined."[2] In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. For every month in the fiscal year, robocalls made up the majority of consumer complaints about Do Not Call violations.[3]

19.     The TCPA was designed to prevent calls and messages like the ones described in this Complaint, and to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to

---

[1]     Tom Wheeler, *Cutting off Robotexts* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls.

[2] Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), available at https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

[3] Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc (last visited March 11, 2020).

private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

## FACTUAL ALLEGATIONS RELATIVE TO BRIAN THOMPSON

20.     For all times relevant herein, Mr. Thompson was the owner of a cellular telephone line with the (216) prefix and ending in 3056.

21.     Mr. Thompson registered the phone number referenced above on the National Do Not Call Registry on June 25, 2009.

22.     Mr. Thompson received a text message from Defendants on December 7, 2019, from the number identified on his caller ID as 657-360-4652. The unsolicited robotext stated: "Congrats Brian! Your code 7SR-K9M2 printed on your last receipt is among 7 we randomly picked for $1,000 Walmart gift card promotion c6rzc.info/lg6RF72BTV87."

23.     Mr. Thompson replied "Stop."

24.     Defendants sent the unsolicited robotext to Mr. Thompson's cellular telephone for the purpose of sending Mr. Thompson spam advertisements and promotional offers, via text messages, like those described above.

25.     For all relevant times herein, Mr. Thompson never consented to receive phone calls or text messages from Defendants.

26.     For all relevant times herein, Mr. Thompson never provided his telephone number to Defendants.

27.     For all relevant times herein, Mr. Thompson never did business with Defendants.

## FACTUAL ALLEGATIONS RELATIVE TO ANGELA THOMPSON

28.     For all times relevant herein, Ms. Thompson was the owner of a cellular telephone line with the (216) prefix and ending in 4510.

29.     Ms. Thompson registered the phone number referenced above on the National Do Not Call Registry on June 16, 2012.

30.     On December 24, 2019, at 9:09 a.m., Ms. Thompson received an unsolicited robotext message from Defendants from the number identified on her caller ID as 951-391-2478. This unsolicited message stated: "Congrats WAYNE L! Your code R5Z-M9T8 printed on your last receipt is among 7 we randomly picked for $1,000 Walmart gift card promotion n1xrn.info/A9lcOJ4mtGyC."

31.     Since December 24, 2019 until the present, Defendants have continued to send Ms. Thompson spam advertisements and promotional offers, via unsolicited text messages.

32.     Ms. Thompson received an unsolicited robotext from Defendants purporting to be from Amazon, stating: "FINAL NOTICE: WAYNE L, please review your address details for shipment ID: 7S86J3 HERE: l8cr.xyz/M5GpXbsJCe Sender: AMAZON."

33.     For all relevant times herein, Ms. Thompson never consented to receive phone calls or text messages from Defendants.

34.     For all relevant times herein, Ms. Thompson never provided her telephone number to Defendants.

35.     For all relevant times herein, Ms. Thompson never did business with Defendants.

**FACTS RELATIVE TO BOTH PLAINTIFFS**

36.     Plaintiffs' telephone numbers that Defendants texted were assigned to a cellular telephone service.

37.     Plaintiffs were never customers of Defendants and never provided their cellular telephone numbers to Defendants for any reason whatsoever. Accordingly, Defendants never

received Plaintiffs' prior express consent to receive unsolicited text messages, pursuant to 47 U.S.C. § 227 (b)(1)(A).

38.     Each of Defendants' text messages to Plaintiffs constitutes a violation or multiple violations of the TCPA, including 47 U.S.C. § 227(b)(1)'s prohibition against the use of an ATDS.

39.     Based on reviewing the text messages sent to each of the Plaintiffs, it is reasonable to infer that the messages had been sent automatically rather than manually typed by a human for the following reasons:

     a.     None of the messages were in response to any action either Plaintiff had taken;

     b.     All of the messages came from caller IDs that neither Plaintiff recognized;

     c.     None of the messages identified the sender of the message;

     d.     With the exception of the December 7, 2019 message to Mr. Thompson, none of the messages to either Plaintiff was accurately personalized;

     e.     All of the messages contained unusual punctuation or other grammatical errors that would allow it to evade certain programs that block spam calls, such as a missing "e" in "Rply";

     f.     One message purported to provide opt-out instructions.

40.     Each of the messages sent to Plaintiffs caused injury, as these messages invaded their individual solitude, stopped their train of thought, wasted their time, caused annoyance and harassment, and consumed the battery life and memory storage capacity of each Plaintiff's cellular phone.

## DEFENDANTS' LIABILITY FOR THE MARKETING CALLS

41.     Defendants are liable for each of the TCPA-violating robotexts under one or more of the following theories of liability: (1) Direct Liability, (2) Actual Authority, (3) Apparent Authority, (4) Ratification, (5) Joint Enterprise, (6) Acting in Concert, and (7) "On Behalf Of" Liability.

## DIRECT LIABILITY

42.     Defendants' scheme involves the use of illegal robotexting of advertising and promotional offers, as alleged herein, to advance their pecuniary or business interests.

43.     Defendants directly initiated the unlawful robotexts to Plaintiffs and the other Class members and are directly liable for violating the TCPA.

## ACTUAL AUTHORITY

44.     The TCPA incorporates federal common law agency principles.

45.     Defendants' practice of outsourcing the act of executing the unlawful robotexts to third parties (who Defendants have elsewhere referred to as "Publishers") would not and does not absolve them from liability under the TCPA.

46.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may

have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 FCC Rcd. 6574, 6588 (FCC 2013) ("*Dish Network*").

47.    Defendants signed contracts with each other and with the Publishers, authorizing the Publishers to promote Defendants' products or services in Ohio to Plaintiffs and across the country to others similarly situated, on Defendants' behalf.

48.    By signing contracts making the Publishers authorized agents to execute unlawful robotexts to Plaintiffs, Defendants are liable for their agents' violations of the TCPA by unlawfully robotexting Plaintiffs and others similarly situated.

49.    During all relevant times, Defendants knew that the Publishers were engaged in marketing practices constituting unlawful robotexting in the course of promoting Defendants' products or services, in accordance with the specifications and contractual provisions agreed to by Defendants and the Publishers. Defendants accepted, did not object to, and benefitted from the Publishers' violations of the TCPA.

50.    Defendants directed and controlled the conduct of the Publishers by, *inter alia*, instructing and closely controlling the content of the robotexts and contacts with Plaintiffs and other robotext recipients, controlling and monitoring the timing, volume, direction, and manner of the Publishers' conduct on behalf of Defendants, establishing and enforcing guidelines and specifications of the Publishers' activities on behalf of Defendants, retaining rights to modify, amend, or withdraw the Publishers' authority to act on behalf of Defendants in sending the unlawful robotexts, compensating the Publishers for engaging in conduct that violated the TCPA, knowing that the Publishers engaged in conduct that violated the TCPA or instructing the

10

Publishers, impliedly or expressly, not to disclose information that if known by Defendants would establish Defendants' knowledge that the Publishers were engaged in conduct violating the TCPA, and providing feedback to the Publishers regarding changes in practices.

51.     Due to the anonymous nature of robotexting, Plaintiffs have no access to information to identify the exact relationship between Defendants and the Publishers who are the anonymous public facing arm of Defendants' unlawful robotexting scheme.

52.     However, Plaintiffs are not required to know this information at the pleading stage. *Dish Network* states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." 28 FCC Rcd. at 6592-93 (¶ 46).

53.     Defendants authorized the Publishers to send the unlawful robotexts to Plaintiffs and the other recipients. The Publishers promoted Defendants' business or pecuniary interests.

54.     The Publishers acted in concert with Defendants, which permitted Defendants to enjoy the benefits of mass robotexting while purporting to move the illegal activity outside their purview.

**APPARENT AUTHORITY**

55.     *Dish Network* further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing

scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd. at 6592 (¶ 46).

56.    The integration of Defendants' sales efforts with robotexting used by the sellers was so seamless that it appeared to Plaintiffs that Defendants and the Publishers were acting together as the same company.

57.    Defendants allowed the Publishers to enter consumer information into their systems. Indeed, robotexts sent to Plaintiffs all contained first names of consumers to which the robotexts were apparently directed.

58.    Defendants gave the Publishers the authority to use their websites, hyperlinks, URLs, trade name, trademark, service mark, forms, contracts, and materials.

59.    The apparent authority of the Publishers is illustrated by the fact that the links in the robotexts direct called parties, including Plaintiffs, to Defendants' websites.

## RATIFICATION

60.    Defendants knowingly and actively accepted business and contacts with consumers that originated through TCPA-violating robotexts placed by the Publishers.

61.    Defendants ratified the Publishers' TCPA violations by knowingly accepting the benefit of new contacts with consumers despite the fact that these consumers were generated through conduct that violates the TCPA. Alternatively, Defendants ratified the Publishers' TCPA violations by knowing facts that would cause an ordinarily prudent person to inquire as to whether the Publishers were complying with the TCPA, or create reasonable suspicion that the Publishers

do not comply with the TCPA, willfully turning a blind eye to those facts, and accepting the benefit of new consumer contacts despite the fact that they were generated through conduct that violates the TCPA.

62.     Defendants ratified the TCPA violations of the Publishers by being willfully ignorant of the violations or by being aware that such knowledge was lacking and accepting the benefits of the Publishers' TCPA violations.

63.     Defendants knew that the Publishers had been cited for TCPA violations and generated numerous consumer complaints because of their telemarketing practices, but failed to terminate their relationship with the Publishers, and instead continued to do business with them.

## JOINT ENTERPRISE

64.     Defendants and the Publishers had a tacit agreement, or approved of after the fact, for the marketing of Defendants' services by means that violate the TCPA, including sending robotexts to numbers registered on the National Do Not Call Registry and to cellular or other phone numbers using an ATDS, all without obtaining prior express consent to engage in such conduct.

65.     Defendants and the Publishers were part of a common enterprise and had a community of interest in marketing and promoting Defendants' websites, services, and products.

66.     Defendants and the Publishers had an equal right to control the conduct thereof by specifying the type of people to be called, when to call, and what to say in the messages and calls.

67.     Defendants and the Publishers entered into an agreement on how the proceeds of the unlawful activities would be apportioned among them.

68.     Defendants and the Publishers are jointly and severally liable for the resulting damage caused by the Publishers' TCPA-violating conduct.

## ACTING IN CONCERT

69.     Defendants acted in concert with the Publishers when they sent robotexts in violation of the TCPA, as alleged herein.

70.     Defendants received the benefit of the consumer contacts generated by the Publishers.

71.     Defendants compensated the Publishers for engaging in conduct that violated the TCPA.

72.     Defendants and the Publishers agreed and were part of a common design to robotext consumers in order to generate business and consumer contacts.

73.     Defendants had a tacit understanding that the Publishers would engage in telemarketing activity that violated the TCPA.

74.     Defendants knew that the Publishers' conduct was a breach of duty to Plaintiffs.

75.     Defendants gave the Publishers substantial assistance in accomplishing the tortious result, including compensating the Publishers for generating respondents pursuant to robotexts and giving instructions on the content, timing, direction, volume, and manner of the text messaging activities.

76.     Defendants furthered the tortious conduct by their cooperation, and lending aid to the Publishers, and adopting the Publishers' actions for their own benefit.

77.     Defendants' own conduct constitutes a breach of duty to Plaintiffs.

78.     Each Plaintiff's injury is indivisible.

79.     Defendants acted tortiously, and the harm resulted from the robotexting by Defendants and the Publishers.

80.     Defendants are all jointly and severally liable for the resulting damage caused by the Publishers.

## "ON BEHALF OF" LIABILITY

81.     The TCPA's Do Not Call rules specifically contemplate third-party liability for Do Not Call violations. The TCPA specifies that a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the Do Not Call regulations may bring an action based on such violation to enjoin further calls or recover damages. This means that a seller may be liable for Do Not Call violations performed on its behalf, even if the seller has no knowledge of the acts at the time they are performed.

82.     The Publishers sent robotexts in violation of the TCPA's Do Not Call rules to each Plaintiff on behalf of Defendants.

## CLASS ALLEGATIONS

83.     **Automatic Telephone Dialing System Class**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23, on behalf of a nationwide class of similarly situated individuals and entities ("the ATDS Class"), defined as follows:

> All person(s) who received one or more unsolicited text messages from Defendants and/or a third party acting on Defendants' behalf when the text message was (1) not made for emergency purposes, (2) not made with the person(s) express prior written consent, and (3) was sent on or after March 31, 2016.

> Excluded from the ATDS Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the ATDS Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

84. **Do Not Call Class**: Ms. Thompson also brings this action on behalf of a nationwide class of similarly situated individuals and entities (the "DNC Class"), defined as follows:

> All person(s) who received more than one unsolicited text message within a twelve month period from Defendants and/or a third party acting on Defendants' behalf where the text message (1) was sent to a telephone number registered with the National Do Not Call Registry prior to the text message being sent, (2) contained a message marketing a product or service of Defendants or their agents, and (3) was sent on or after March 31, 2016

> Excluded from the DNC Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the DNC Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

85. **Numerosity**: Upon information and belief, the Classes are comprised of tens of thousands of Class members.  Thus, the Classes are so numerous that joinder of all members is impracticable.  Class members can easily be identified through Defendants' records, or by other means.

86. **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiffs and Class members, which predominate over any individual issues, including:

> a. Whether, within the four years prior to the filing of this Complaint, Defendants or their agents sent any text messages to the ATDS Class members (other than a message made for emergency purposes or made with the prior express written consent of the called party) using an ATDS to any telephone number assigned to a cellular phone service;

b.  Whether, within the four years prior to the filing of this Complaint, Defendants or their agents sent any text message to the DNC Class members without obtaining the requisite prior express consent; and

c.  Whether Defendants negligently, knowingly, or willfully engaged in conduct that violated the TCPA;

d.  Whether Plaintiffs and the Class members were damaged by Defendants' violations of the TCPA, and the extent of damages for each instance in which the TCPA was violated.

87.  **Typicality**: Plaintiff's claims are typical of the claims of members of the Classes. All claims are based on the same legal and factual issues. Plaintiffs received multiple text messages from the Defendants to their cellular phones within a twelve-month period.

88.  **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of members of the Classes and Defendants have no defenses unique to Plaintiffs.  The questions of law and fact common to the proposed Classes predominate over any questions affecting only individual members of the Classes.

89.  **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Classes to prosecute their claims individually. The trial and the litigation of Plaintiffs' claims are manageable.

**COUNT ONE**
**Negligent Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227, *et seq.***
**(On behalf of the Plaintiffs and the ATDS Class)**

90.     Plaintiffs incorporate by reference paragraphs 1-89 of this Complaint as though fully stated herein.

91.     Based on the allegations above herein, Defendants or their agents violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls (including text messages) to the cellular telephone numbers of Plaintiffs and members of the ATDS Class using an ATDS and/or artificial or prerecorded voice without obtaining prior express written consent.

92.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

93.     As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs and the ATDS Class are entitled to an award of $500.00 in statutory damages for each violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

94.     Plaintiffs and the ATDS Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT TWO**
**Knowing and Willful Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227, *et seq.***
**(On behalf of the Plaintiffs and the ATDS Class)**

95.     Plaintiffs incorporate by reference paragraphs 1-89 of this Complaint as though fully stated herein.

96.     Based on the allegations herein, Defendants or their agents knowingly and/or willfully violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls (including

text messages) to the cellular telephone numbers of Plaintiffs and members of the ATDS Class using an ATDS and/or artificial or prerecorded voice without prior express written consent.

97.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

98.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs and the ATDS Class are entitled to an award of $1,500.00 in statutory damages for each violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

### COUNT THREE
**Negligent Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227, *et seq.***
**(On Behalf of Ms. Thompson and the DNC Class)**

99.     Ms. Thompson ("Plaintiff" for purposes of this Count Three) incorporates by reference paragraphs 1-89 of this Complaint as though fully stated herein.

100.    Based on the allegations herein, Defendants or their agents violated the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to the telephone numbers of Plaintiff and members of the DNC Class even though those numbers were at all relevant times listed on the National Do Not Call Registry.

101.    Plaintiff and members of the DNC Class seek an award of $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

102.    Plaintiff and members of the DNC Class are also entitled to and do seek an injunction prohibiting Defendants and Defendants' agents from violating the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to any telephone numbers on the National Do Not Call Registry.

**COUNT FOUR**
**Knowing and Willful Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c)**
**(On Behalf of the Plaintiffs and the DNC Class)**

103.     Ms. Thompson ("Plaintiff" for purposes of this Count Four) incorporates by reference paragraphs 1-89 of this Complaint as though fully stated herein.

104.     Based on the allegations herein, Defendants knowingly and/or willfully violated the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls (including text messages) to the telephone numbers of Plaintiff and members of the DNC Class even though those numbers were listed on the National Do Not Call Registry.

105.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

106.     Plaintiff and members of the DNC Class are entitled to and seek an award of up to $1,500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

**COUNT FIVE**
**Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the**
**Various States and District of Columbia**
**(On Behalf of Plaintiffs and the ATDS Class)**

107.     Plaintiffs incorporate by reference paragraphs 1–89 of this Complaint as though fully set forth herein.

108.     Plaintiffs brings this Count individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

   a.     the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq*.;

20

b.      the Alaska Unfair Trade Practices and Consumer Protection Act, AS §
        45.50.471, *et seq.*;

c.      the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

d.      the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

e.      the California Unfair Competition Law, Cal.Bus. & Prof. Code §§17200, *et
        seq.* and 17500 *et seq.*;

f.      the California Consumers Legal Remedies Act, Civil Code §§1750, *et seq.*;

g.      the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h.      the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110a, *et seq.*;

i.      the Delaware Consumer Fraud Act, 6 Del. C. § 2511, *et seq.*;

j.      the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k.      the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et
        seq.*;

l.      the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.      the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

n.      the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815
        ILCS 501/1 *et seq.*;

p.      the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

q.      The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code
        Ann. § 714H.1, *et seq.*;

r.      the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

s.      the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

u.      the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.      the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

w.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.      the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

y.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.      the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

aa.     the Missouri Merchandising Practices Act, V.A.M.S. § 407.010, *et seq.*;

bb.     the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

cc.     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

dd.     the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

ee.     the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

ff.     the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

gg.     the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

hh.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

ii.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

jj.     the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq*.;

kk.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.;

ll.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq*.;

mm.     the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq*.;

nn.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

oo.     the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq*.;

pp.     the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq*.;

qq.     the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq*.;

rr.     the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq*.;

ss.     the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq*.;

tt.     the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq*.;

uu.     the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq*.;

vv.     the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq*.;

ww.     the Washington Consumer Protection Act, RCW 19.86.010, *et seq*.;

xx.    the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq*.;

yy.    the Wisconsin Deceptive Trade Practices Act, Wis.Stat. § 100, *et seq*.; and

zz.    the Wyoming Consumer Protection Act, Wy. Stat. § 40-12-101, *et seq*.

109.    The Defendants have engaged in unfair and deceptive acts or practices by sending unsolicited text messages without obtaining prior express consent.

110.    The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce.

111.    The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

112.    As a direct and proximate result of these unfair and unconscionable commercial practices, and as described above, Plaintiffs and the members of the ATDS Class have suffered damages.  Plaintiffs, individually, and on behalf of the ATDS Class, as applicable, seek actual damages and punitive damages, along with reasonable attorney's fees and costs.

113.    The substantial injury outweighs any benefit to consumers or competition that may result from the Defendants' omissions and unfair practices.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Classes defined herein;

B.    Designating each Plaintiff as representative of the Classes and their undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Classes and against Defendants, jointly and severally;

D.      Awarding Plaintiffs and the Classes actual damages, statutory damages, treble damages, and punitive damages, and all other forms of available relief;

E.      Entering an injunction enjoining Defendants from sending further unsolicited text messages;

F.      Awarding Class Counsel attorney's fees and costs, including interest thereon, as allowed by law; and

G.      Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

DATED: March 31, 2020                    Respectfully submitted,

*/s/ Javier L. Merino*
DANNLAW
Javier L. Merino, Esq. (5294699)
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
(201) 355-3440- Direct
(216) 373-0539- Main
(216) 373-0536- Fax

Marc E. Dann
(*pro hac vice* anticipated)
Brian D. Flick
(*pro hac vice* anticipated)
DANNLAW
P.O. Box. 6031040
Cleveland, Ohio 44103
Office:  (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

Thomas A. Zimmerman, Jr.
(*pro hac vice* anticipated)
*tom@attorneyzim.com*
Jeffrey Blake
(*pro hac vice* anticipated)
*jeff@attorneyzim.com*

25

ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*www.attorneyzim.com*

*Counsel for Plaintiffs Brian Thompson and Angela
Thompson and the Putative Classes*