# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

BRIAN THOMPSON and ANGELA THOMPSON,
Individually and on behalf of all others similarly situated,

        Plaintiff,

                                      No.: 1:20-cv-02680

  -against-

FLUENT, INC. and REWARD ZONE USA, LLC,

Defendants.

------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR A STAY

On the Brief:
NEIL E. ASNEN

KLEIN MOYNIHAN TURCO LLP

*Attorneys for Defendants*
450 Seventh Avenue – 40th Floor
New York, NY 10123
(212) 246-0900
nasnen@kleinmoynihan.com

# Table of Contents

Table of Authorities .................................................................................................................. ii
PRELIMINARY STATEMENT ................................................................................................1
ARGUMENT...............................................................................................................................3
    THIS CASE SHOULD BE STAYED PENDING THE SUPREME COURT'S DECISION .4
    A.   Defendants Will Suffer Substantial Prejudice if the Case Proceeds................................5
    B.   A Stay Will Simplify the Issues to Be Litigated..............................................................7
    C.   Plaintiff Will Not be Prejudiced by a Stay .......................................................................8
    D.   The Interest of Non-Parties and the Public Weigh in Favor of a Stay ............................9
    E.   District Courts Nationwide Have Stayed TCPA Cases Pending *Facebook* ...................10
CONCLUSION..........................................................................................................................12

# Table of Authorities

**CASES**

*ACA International v. FCC*,
  855 F.3d 687 (D.C. Cir. 2017) .................................................................................................. 1

*Acton v. Intellectual Capital Mgmt.*,
  2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) .......................................................................... 6

*Aleisa v. Square, Inc.*,
  2020 WL 5993226 (N.D. Cal. Oct. 9, 2020) .......................................................................... 12

*Allan v. Pennsylvania Higher Ed. Assistance Agency*,
  968 F.3d 567 (6th Cir. 2020) .................................................................................................... 2

*Canady v. Bridgecrest Acceptance Corp.*,
  2020 WL 5249263 (D. Ari. Sept. 3, 2020) ............................................................................. 13

*Clinton v. Jones*,
  520 U.S. 681 (1997) ................................................................................................................. 5

*Dominguez v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018) ................................................................................................. 2, 4

*Duguid v. Facebook, Inc.*,
  926 F.3d 1146 (9th Cir. 2019), *cert. granted in part*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020) ........... 4

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020) ..................................................................................................... 2

*Errington v. Time Warner Cable Inc.*,
  2016 WL 2930696 (C.D. Cal. May 18, 2016) ....................................................................... 10

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
  2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) .......................................................................... 7

*Facebook, Inc. v. Duguid,*,
  No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020) ................................................................ 3

*Fairbank Reconstruction Corp. v. Greater Omaha Packing Co.*,
  2014 WL 693001 (W.D.N.Y. Feb. 21, 2014) .......................................................................... 5

*Frable v. Synchrony Bank*,
  2016 WL 6123248 (D. Minn. 2016) ...................................................................................... 11

*Gadelhak v. AT&T Servs., Inc.*,
  950 F.3d 458 (7th Cir. 2020) .................................................................................................... 2

*Glasser v. Hilton Grand Vacations Co., LLC*,
  948 F.3d 1301 (11th Cir. 2020) ................................................................................................ 2

*GOJO Indus., Inc. v. Innovative Biodefense, Inc.*,
  407 F. Supp. 3d 356 (S.D.N.Y. 2019) ...................................................................................... 6

*Goldstein v. Time Warner N.Y. City Cable Group*,
   3 F.Supp.2d 423 (S.D.N.Y. 1998) ................................................................................................. 6

*Hoagland v. Axos Bank*,
   2020 WL 5223547 (S.D. Cal. July 27, 2020) ............................................................................... 3

*Kappel v. Comfort*,
   914 F.Supp. 1056 (S.D.N.Y. 1996) ............................................................................................... 6

*Kolloukian v. Uber Techs., Inc.*,
   2015 WL 9598782 (C.D. Cal. Dec. 14, 2015) ............................................................................ 11

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ..................................................................................................................... 5

*Loftus v. SignPost, Inc.*,
   19-cv-07984 (JGK) (Dkt. No. 53) (S.D.N.Y. Oct. 19, 2020) ............................................... 3, 12

*Marks v. Crunch v. San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) .................................................................................................. 1, 4

*Nuccio v. Duve*,
   2015 WL 1189617 (N.D.N.Y. Mar. 16, 2015) .......................................................................... 12

*Nussbaum v. Diversified Consultants, Inc.*,
   2015 WL 5707147 (D.N.J. Sept. 28, 2015) ............................................................................... 10

*Reynolds v. Time Warner Cable, Inc.*,
   2017 WL 362025 (W.D.N.Y. Jan. 25, 2017) ......................................................................... 9, 10

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits and Wine USA, Inc.*
   525 F. Supp. 2d 379 (S.D.N.Y. 2007) .......................................................................................... 9

*Sealey v. Chase Bank, N.A.*,
   2020 WL 5814108 (N.D. Cal. Sept. 29, 2020) ............................................................................ 3

*Seefeldt v. Entm't Consulting Int'l, LLC*,
   2020 WL 4922371 (E.D. Mo. Aug. 21, 2020) ........................................................................... 13

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012) .......................................................................................... 7

*Veytia et al. v. Portfolio Recovery Associates, LLC et la.*,
   2020 WL 5257881 (S.D. Cal. Sept. 3, 2020) ............................................................................. 13

*Whattoff-Hall v. Portfolio Recovery Associates, LLC*,
   2020 WL 5223546 (S.D. Cal. July 23, 2020) ............................................................................ 13

**STATUTES**

47 U.S.C. § 227 ................................................................................................................................ 1, 4

## PRELIMINARY STATEMENT

Brian Thompson and Angela Thompson (collectively, "Plaintiffs") filed a putative class action complaint alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") against Fluent, Inc. ("Fluent") and Reward Zone USA, LLC ("Reward Zone") (collectively, "Defendants") arising from their alleged receipt of text messages on their respective cellular telephones. *See* Complaint ¶¶ 20-35. Plaintiffs allege that these text messages were sent through use of an automatic telephone dialing system ("ATDS"). *Id.* at ¶¶ 38, 64, 91, 96.

While the TCPA generally prohibits making calls or sending text messages using an automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service," 47 U.S.C. § 227(b)(1), what exactly an automatic telephone dialing system is has lacked a uniform answer subsequent to the D.C. Circuit Court of Appeal's decision in *ACA International v. FCC*, 855 F.3d 687 (D.C. Cir. 2017), in which the Federal Communications Commission's 2015 declaratory order purporting to provide interpretative guidance on the statutory term was vacated.

A stark split among the appellate circuits as to what is and what is not an ATDS has taken root following *ACA International*. On the one hand, the Second, Sixth and Ninth Circuits have adopted an interpretation where "the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically. *Marks v. Crunch v. San Diego, LLC,* 904 F.3d 1041, 1052 (9th Cir. 2018); *see also Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) ( "[I]t does not matter that the lists are produced by human-generators rather than mechanical number-generators. What matters is that the system can store those numbers and make calls using them."); *see also Allan v. Pennsylvania Higher Ed. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020); On the other hand, the Third, Seventh, and Eleventh Circuits

1

have adopted a less expansive interpretation of the statutory term and have held that for a device to constitute an ATDS, it must have the capacity to generate random or sequential numbers and dial those numbers. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020) ("Satisfied that 'using a random or sequential number generator' does not describe how the numbers are 'to be called,' . . . [w]e therefore hold that the phrase 'using a random or sequential number generator' describes how the telephone numbers must be 'stored' or 'produced.'"); *see also Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018); *Glasser v. Hilton Grand Vacations Co.*, LLC, 948 F.3d 1301, 1312 (11th Cir. 2020).

In order to resolve that circuit split, the United States Supreme Court ("SCOTUS") recently granted a petition for certiorari for the purpose of providing the definitive determination as to the proper interpretation of ATDS for TCPA purposes. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), *cert. granted in part*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020) ("*Facebook*"). SCOTUS has set oral argument on *Facebook* for December 8, 2020.[1]

A stay issued pursuant to the Court's inherent power is warranted in light of SCOTUS's imminent resolution of the ATDS issue. Given the highly unsettled nature of the statutory term's appropriate definition, the parties, the Court, and yet-to-be identified non-parties to this suit will all benefit from awaiting ultimate guidance from SCOTUS. Resources will be conserved, judicial economy and efficiency promoted, and issues streamlined while avoiding unnecessary discovery and litigation over issues that can be mooted by the high court as the petition granted by SCOTUS directly challenges the Ninth Circuit interpretation of ATDS - the interpretation followed by the Second Circuit in *Duran*. For those reasons, as more fully detailed herein, Defendants respectfully request that the Court issue a stay pending the resolution of *Facebook* by SCOTUS as so many

---

[1] https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalDecember2020.pdf

2

district courts across the country have prudently opted to do in recent weeks. *See Loftus v. SignPost, Inc.*, 19-cv-07984 (JGK) (Dkt. No. 53) (S.D.N.Y. Oct. 19, 2020); Sealey v. Chase Bank, N.A., 2020 WL 5814108 (N.D. Cal. Sept. 29, 2020); *Hoagland v. Axos Bank*, 2020 WL 5223547 (S.D. Cal. July 27, 2020).

## ARGUMENT

The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Uniformity on what this term means has been lacking for years. Circuit Courts are currently split on what kind of equipment constitutes an ATDS. The interpretation of the term seemingly shifts from case to case based solely on which court addressed the issue last. Some courts have held that TCPA liability extends to equipment that "stores numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018). Others hold that for a device to constitute an ATDS under the TCPA, it must have the capacity to "generat[e] random or sequential telephone numbers and dial[] those numbers." *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018).

On July 9, 2020, the United States Supreme Court granted certiorari in *Facebook* to address this circuit split and decide "[w]hether the definition of an ATDS [Automated Telephone Dialing System] in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator." *Facebook*, 926 F.3d 1146, *cert. granted sub nom*, No. 19-51, Pet'r's Br. ii, (petition for cert. granted July. 9, 2020).

3

The precise issue before SCOTUS in *Facebook* is central to this case. Plaintiffs allege that Defendants are liable for text messages sent to them through use of an ATDS. The answer to the question of whether or not dialing equipment is excluded from the definition of ATDS if it dials from a human-produced list of numbers rather than numbers produced from a random or sequential number generator is likely to be dispositive of those allegations.

To ensure that the parties and the Court do not waste resources, a stay is warranted pending SCOTUS' imminent decision. Every single factor analyzed by courts in this Circuit when considering a stay favors granting the requested relief. Plaintiff would suffer no discernable harm if a stay were granted. By contrast, the Supreme Court's ruling in *Facebook* will have a material impact on Defendants' potential liability in this matter; Defendants would be greatly prejudiced if this case proceeds, forced to provide voluminous, potentially unnecessary discovery; and the Court's time and resources will be wasted if it opts to forge ahead while SCOTUS is on the precipice of upending current TCPA jurisprudence. Temporarily granting a stay will streamline and simplify the litigation. The Supreme Court is addressing a major circuit split that implicates an issue central to Plaintiffs' *prima facie* case. It is therefore in the best interests of all interested parties, including the public at large, to allow SCOTUS to provide additional clarity so that courts in different jurisdictions cease developing and follow differing sets of rules governing marketing calls. For the foregoing reasons, a stay is appropriate and the instant motion should be granted.

## THIS CASE SHOULD BE STAYED PENDING THE SUPREME COURT'S DECISION

District courts have "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 707 (1997) (*citing Landis v. North American Co.,* 299 U.S. 248, 254 (1936)); *see also Fairbank Reconstruction Corp. v. Greater Omaha Packing Co.,* 2014 WL 693001, at *1 (W.D.N.Y. Feb. 21, 2014). This discretion is most

4

appropriately exercised in those instances when "disposition of an independent matter [] will likely affect a case on the court's calendar." *Goldstein v. Time Warner N.Y. City Cable Group*, 3 F.Supp.2d 423, 437-38 (S.D.N.Y. 1998) ("courts have the authority to stay proceedings pending the disposition of another case that could affect the outcome."); *Acton Intellectual Capital Mgmt.*, 2015 WL 9462110 at *6. In exercising this discretion, courts in this Circuit consider the following factors:

> 1) the private interests of the [nonmovant] in proceeding expeditiously with the civil litigation as balanced against the prejudice to the [nonmovant] if delayed; (2) the private interests of and burden on the [movant]; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*GOJO Indus., Inc. v. Innovative Biodefense, Inc.*, 407 F. Supp. 3d 356, 361–62 (S.D.N.Y. 2019) (quoting *Kappel v. Comfort*, 914 F.Supp. 1056, 1058 (S.D.N.Y. 1996))). Here, not only do each of the foregoing factors weigh in favor of granting the requested stay, but SCOTUS's resolution of this key issue will serve to streamline the discovery and related litigation of this case. A stay should issue accordingly.

### A. Defendants Will Suffer Substantial Prejudice if the Case Proceeds

SCOTUS's forthcoming ruling is anticipated to have a substantial, and material, impact on the merit of Plaintiffs' claims, and thus the scope of Defendant's potential liability in this matter. If the case proceeds before SCOTUS clarifies what is and what is not an ATDS, Defendants will expend enormous resources, including litigation fees, defending itself on an issue that not only is dispositive of claims against it but also an issue whose legal foundation is likely to be altered, if not entirely upended, in the near future. *See Estate of Heiser v. Deutsche Bank Trust Co. Americas*, 2012 WL 5039065, at *5 (S.D.N.Y. Oct. 17, 2012) (staying litigation pending outcome of Second

5

Circuit appeal that would decide "issues potentially dispositive of this case," reasoning that "failure to grant a stay could lead to unnecessary and time-consuming litigation"); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 619-22 (S.D.N.Y. 2012) (granting a stay pending the outcome of a Supreme Court case and noting that a stay is proper "when a higher court is close to settling an important issue of law.").

Requiring Defendants "to submit to voluminous, potentially unnecessary discovery," particularly substantial discovery of electronically stored information that is being contemplated by Plaintiffs, "would be inequitable and a waste of time and resources." *See Kotlyar v. Univ. of Chi. Med. Ctr.*, 2017 U.S. Dist. LEXIS 197167, at *9 (N.D. Ill. Nov. 30, 2017). Defendants, like so many defendants in putative TCPA class actions, bear the far heavier burden of resource expenditure as a consequence of the discovery obligations given the nature of the claims. Plaintiffs' complaint concedes that they can only "infer" that an ATDS was used to transmit the text messages that they allegedly received. *See* Complaint ¶ 10. The expansive, voluminous disclosure required to substantiate and/or refute that inference is self-evident and will create a tremendous burden on Defendants and non-parties. This is particularly so in the event that the case proceeds under the current Ninth and Second Circuit interpretation of ATDS whose analysis focuses on the capability of dialing equipment to generate random and/or sequential numbers. However, that interpretation is now subject to scrutiny by SCOTUS. Thus, in the event that SCOTUS adopts the alternative interpretation of an ATDS, under which equipment that dials from human-generated lists of numbers are excluded from the definition, then the aforementioned scope of disclosure becomes superfluous, unnecessary, and whose production would be a wasteful burden and expense. This is self-evident because under this alternative definition, the more important examination is whether the dialing equipment dials from lists of human-generated

6

numbers. The parties would therefore be in a position to avoid engaging in a battle of the experts that the highly technical and nuanced probe of the technological capabilities of equipment and software inevitably devolves into. The prejudice to Defendants by engaging in this unnecessary discovery prior to SCOTUS's decision is apparent. Issuance of a temporary stay is the most prudent course of action under the circumstances.

**B.     A Stay Will Simplify the Issues to Be Litigated**

A stay will streamline the issues in dispute and simplify the litigation as a result. Moreover, its duration will be finite and temporary as SCOTUS has scheduled oral argument in *Facebook* for December 8, 2020. The benefit to all parties, including the Court, by awaiting SCOTUS's definitive resolution is manifest.

SCOTUS's forthcoming ruling on the proper interpretation of an ATDS for TCPA purposes will be have a material, and likely dispositive, impact on a central issue in this case. Judicial resources will be preserved by awaiting that ruling. Conversely, hastily proceeding before SCOTUS renders its decision on this issue will undoubtedly invite needless and expensive discovery, and related motion practice that will require adjudication by the Court, all concerning issues that may well later become mooted by SCOTUS's decree. A stay will afford the Court efficiencies through avoidance of revisiting one or more judicial determinations premised on jurisprudence that SCOTUS may ultimately modify or invalidate, as well as through the high court's provision of clarity of the issue for purposes of analyzing and deciding future dispositive motions. *See Reynold*, 2017 WL 362025, at *2; *Mount v. PulsePoint, Inc.*, 2014 WL 902965, at *2 (S.D.N.Y. Mar. 5, 2014) (explaining that a stay pending "resolution of these issues by [the Third Circuit] will offer valuable guidance in the present case.")

Additionally, the parties will realize further benefits from a stay pending such clarification from SCOTUS because, at present, Defendants' ability to sufficiently evaluate its settlement position has been inhibited by the flux in the state of TCPA law. Defendants thus anticipate that a stay is likely promote the prospects of a compromise resolution of this dispute without the need for superfluous, needless and expensive litigation. *See e.g., Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits and Wine USA, Inc.* 525 F. Supp. 2d 379, 384 (S.D.N.Y. 2007) (noting that a stay "would promote settlement between the parties [and] the federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources.").

Because it will streamline discovery, limit the issues before the Court, and facilitate fruitful settlement negotiations, the Court should issue an order staying these proceedings pending SCOTUS's resolution of *Facebook*.

### C.     Plaintiff Will Not be Prejudiced by a Stay

Whereas the prejudice to Defendants in the absence of a stay is clear and irreparable, Plaintiffs will suffer no undue prejudice or tactical disadvantage from a stay of these proceedings. Courts have held that there is no likelihood of prejudice merely because the stay could delay a plaintiff's potential award of money damages. *See Nussbaum v. Diversified Consultants, Inc.*, No. CIV. 15-600, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015). Moreover, even in those instances in which plaintiffs seek injunctive relief, a stay poses no risk to plaintiff if the challenged conduct has already stopped. Notwithstanding Plaintiffs' request for an injunction against Defendants, Plaintiffs do not claim that they continue to receive text messages and/or telephone calls from or on behalf of Defendants. *See Reynolds v. Time Warner Cable, Inc.*, 2017 WL 362025, *2 (W.D.N.Y. Jan. 25, 2017) (finding a lack of prejudice where the defendant "has represented that

8

it has ceased the challenged conduct, and plaintiff has not disputed that representation"). Plaintiffs chiefly seek to recover statutory damages for Defendants' alleged violation of the TCPA and any delay in seeking statutory damages, without more, does not constitute harm or damage to a plaintiff. *See Errington v. Time Warner Cable Inc.*, 2016 WL 2930696, *4 (C.D. Cal. May 18, 2016) (in staying TCPA case pending resolution of potentially dispositive decision by the D.C. Circuit, holding that the "possible prejudice to Plaintiff is minimal.").

Plaintiffs, like Defendants, benefit from a stay pending *Facebook's* resolution, notwithstanding Plaintiffs' anticipated argument to the contrary. They too run the cognizable risk of incurring significant discovery-related expenses advancing claims whose legal merit may ultimately be undermined by SCOTUS's ruling. *See Kolloukian v. Uber Techs., Inc.*, 2015 WL 9598782,*1 (C.D. Cal. Dec. 14, 2015) (recognizing that stay of TCPA case pending resolution of a D.C. Circuit case "reduce[d] burden on the parties."). Moreover, Plaintiffs' ability to pursue discovery will not be harmed if the Court issues a stay. Rather, the scope of discovery will be focused and tailored in accordance with SCOTUS's imminent interpretation of ATDS. *See Frable v. Synchrony Bank*, 2016 WL 6123248, *4 (D. Minn. 2016) ("[d]efendant will rely on existing records to establish its position[;] [p]laintiff will rely in part on his own testimony to support his argument that he did not provide consent, and thus it is unlikely that a delay of a few months would prejudice him"). While Plaintiffs may be reticence to recognize or acknowledge the benefit of a stay, it will nevertheless inure to them as much as it will to Defendants. The Court should issue the stay pending *Facebook*'s resolution accordingly.

### D.     The Interest of Non-Parties and the Public Weigh in Favor of a Stay

A stay will further the public interest and the interests of persons not party to this action. It is axiomatic that the public has a strong interest in fair, efficient, and uniform administration of

9

justice by the courts. The hodgepodge set of rules that have developed following *ACA Int'l* has proven unsustainable. Whereas previous litigants have suffered from the unequal application of the TCPA this Court is now presented with the opportunity to ensure that not one more lawsuit than was necessary falls through that crack by permitting SCOTUS to weigh in on the matter before proceeding further.

Likewise, a stay also promotes the interests of non-parties because it will prevent discovery that will unnecessarily burden non-parties, such as Plaintiffs' cellular carrier(s) or third-party dialers who may have contacted Plaintiffs and/or putative class members through equipment that dialed numbers from human-generated lists. *See Nuccio v. Duve*, 2015 WL 1189617, *5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources and minimiz[ing] the possibility of conflicts between different courts.")(internal quotations omitted)(citation omitted). A stay should issue accordingly.

### E.     District Courts Nationwide Have Stayed TCPA Cases Pending *Facebook*

Given the fact that the appropriate interpretation of the ATDS term is so central to a TCPA claim, as well as the anticipation that the nation's highest court will at long last provide definitive clarification on what equipment satisfies the definition, it is not surprising that a wave of district courts across the country has recognized the propriety of issuing stays pending the decision in the short amount of time that has passed since certiorari was granted. *See Loftus v. SignPost, Inc.*, 19-cv-7984 (JGK) (Dkt. No. 53) (S.D.N.Y. Oct. 19, 2020) (Judge Koetl holding that "A decision in the Facebook case may substantially resolve the present case, easing the burden of discovery on the defendant and saving judicial resources. The plaintiff will not be harmed by the stay because the defendant has attested that it is aware of its obligations and has instituted a litigation hold to

10


preserve documents that may be relevant to the litigation. The stay is for a relatively brief period of time because the Supreme Court will likely decide the Facebook case at some point in the current Term. The balance of the relevant factors weighs decidedly in favor of a stay."); *Aleisa v. Square, Inc.*, 2020 WL 5993226 (N.D. Cal. Oct. 9, 2020); *Veytia et al. v. Portfolio Recovery Associates, LLC et la.*, 2020 WL 5257881 (S.D. Cal. Sept. 3, 2020); *Canady v. Bridgecrest Acceptance Corp.*, 2020 WL 5249263, *4; (D. Ari. Sept. 3, 2020) ("The Supreme Court's resolution of *Facebook* has the potential to significantly narrow the issues involved in this case, including the scope of discovery as to Canady's ATDS allegations and the scope of Canady's class-certification request."); *Seefeldt v. Entm't Consulting Int'l, LLC*, 2020 WL 4922371, *2 (E.D. Mo. Aug. 21, 2020) ("Waiting for a decision to issue in *Facebook* will "avoid exhausting judicial resources to decide things like [motions to dismiss], [motions] for class certification, and any possible discovery-related matters or summary judgment motions to follow which may prove fruitless."); *Whattoff-Hall v. Portfolio Recovery Associates, LLC*, 2020 WL 5223546, *1 (S.D. Cal. July 23, 2020) (approving stipulated stay pending *Facebook* on the grounds that a "stay is in the furtherance of judicial economy and will avoid unnecessary expense for the parties and [] forum.").

This Court should follow in the path of its sister courts and issue a stay to allow for SCOTUS to clarify the ATDS issue given its import to adjudication of Plaintiffs' claims.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court stay this case pending the Supreme Court's decision in *Facebook*.

Dated: October 22, 2020

                                           **KLEIN MOYNIHAN TURCO LLP**
                                           *Counsel for Defendants*

                                           Neil E. Asnen, Esq.
                                           450 Seventh Avenue – 40th Floor
                                           New York, NY 10123
                                           (212) 246-0900
                                           nasnen@kleinmoynihan.com